### C. Sir William CRAWFORD, Plaintiff,

v.

### C.O. Jim O'HARA, Sgt. Vincent Mahonik et al., Defendants.

81–CV–88.

United States District Court,
N. D. New York.

Jan. 22, 1981.

---

MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, District Judge.

The plaintiff, presently an inmate of Auburn Correctional Facility, has been a constant litigator in this federal court. My office records show that since January 29, 1979, the plaintiff has filed eleven civil rights complaints not including the present one. Four were dismissed or recommended for dismissal and seven were directed to be filed and served. It seems clear that the plaintiff is not very much impressed by the statement of the United States Supreme Court that federal courts do not sit to supervise state prisons or that automatic service of process places serious burdens upon public officials. *See Meachum v. Fano,* 427 U.S. 215, at 224, 229, 96 S.Ct. 2532, at 2538, 2540, 49 L.Ed.2d 451 (1976); *Ron v. Wilkinson,* 565 F.2d 1254, 1258–1259 (2d Cir. 1977).

In this instance the plaintiff has a fairly brief statement of his claim and it is easier to set it forth than to try to explain it:

On the 19th, day of November 1980 at 5:41 P.M. plaintiff was locked in his cell at the Auburn Facility at which time the defendants Jim O'Hara and D. C. Halstead came to the cell instructed plaintiff to come out so they could search, plaintiff came out and defendant O'Hara went in and started reading plaintiffs confidential legal files and papers, plaintiff advised defendant O'Hara that he was entitled to search through the papers but not to read them and the defendant stated that the sgt. defendant Mahonik ordered him to read the papers, plaintiff advised O'Hara that the sgt. had no such authority, and Halstead was sent by defendant O'Hara to get that sgt. who came immediately and was confronted by plaintiff and asked if he gave defendant (sic) O'Hara such an order and he stated that he had directed his co defendant to read the legal papers, plaintiff advised the sgt. that he had no authority to give such an order and the sgt. defendant told plaintiff to do what he has to do about it, then the sgt. proceeded to read documents and seized a set of corporate articales (sic) and 5 pages part of an application for a grant, plaintiff requested a receipt and the sgt. rendered the same, the defendants had received information from the prison notary public that plaintiff and others had some corporate articles acknowledged and they decided that they had the right to curb such lawful conduct by seizing the legal papers and accomplished the seizure of worthless documents but by violating plaintiffs rights to maintain confidential legal records, and the documents are not unlawful to keep or posess (sic) thereby the seizure is also unlawful.

The relief sought is for preliminary and final injunctions against the continuance of the above unlawful actions and possible transfer of plaintiff for complaining to the court; compensatory and punitive damages in the amount of $500,000.00 as to each defendant, to be considered as a donation to the Not for Profit Corporation of which the seized papers belong, N.U.C.O. of Rochester, N. Y., and attorneys fees of $25,000.00.

Others may be able to but I am unable to grant constitutional stature to these claims that plaintiff says resulted in the seizure of "worthless documents". The New York Department of Correctional Services had a detailed Directive in regard to Control of and Search for Contraband, Classification # 4910, effective 3/8/77. There are specific provisions for Living Quarters Search in General Confinement, and it is fair to assume the provisions were followed. Searches of this kind do not violate the Fourth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 555–557, 99 S.Ct. 1861, 1882–1883, 60 L.Ed.2d 447 (1979); *see also Bonner v. Coughlin,* 517 F.2d 1311 (7th Cir. 1975); modified en banc 545 F.2d 565 (7th Cir. 1976).

The complaint shall be filed without payment of fee and is dismissed.

It is so Ordered.